SMITH PATTEN
SPENCER SMITH, ESQ. (SBN:236587)
DOW W. PATTEN, ESQ. (SBN: 135931)
353 Sacramento St., Suite 1120
San Francisco, California 94111
Telephone (415) 402-0084
Facsimile (415) 520-0104

Attorneys for
DRUCILLA COOPER

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

DRUCILLA COOPER, an individual

Plaintiff,

vs.

UNITED AIR LINES, INC., and DOES 1-10,

Defendants.

CASE NO.

**CV 13 2870**

**COMPLAINT**

**(1) RACE DISCRIMINATION IN VIOLATION OF TITLE VII (42 U.S.C. § 2000e, et seq.)**

**(2) RETALIATION IN VIOLATION OF TITLE VII (42 U.S.C. § 2000e, et seq.)**

**(3) DISABILITY DISCRIMINATION IN VIOLATION OF ADA**

**(4) AGE DISCRIMINATION IN VIOLATION OF ADEA**

**(5) VIOLATION OF THE EQUAL PAY ACT 29 U.S.C. § 206**

Plaintiff, DRUCILLA COOPER, files this Complaint, and complains of the named

Defendants, and each of them, jointly and severally, and for causes of action, alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section

1331 based upon Plaintiff's federal claims, under 24 U.S.C. § 2000 et seq. The Court has

1

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367

2   because the state law claims arise out of the same operative facts.

3   2.      Venue is proper in this Court because the unlawful employment practices complained of

4   occurred in the Northern District of California, and the Defendant, UNITED AIR LINES, INC.

5   (hereinafter "UNITED" or "Defendant") is licensed to and doing business in the Northern

6   District of California.

7   3.      Plaintiff has been damaged in excess of the jurisdictional amount of this Court.

8                                    **INTRODUCTION**

9   4.      This is an action for damages for Race Discrimination, Gender Discrimination,

10  Disability Discrimination, Retaliation, and the Lilly Ledbetter Fair Pay Act. This action arises

11  out of events involving Plaintiff Drucilla Cooper ("Plaintiff"), and Defendants UNITED AIR

12  LINES INC. ("Defendant")

13                                   **THE PARTIES**

14  5.      Plaintiff is a African-American female individual formerly serving in the position of

15  Security Supervisor at United at the San Francisco International Airport ("SFO") and currently

16  serving as a Security Officer, and is a resident of Contra Costa County, California.

17  6.      Defendant United Air Lines, Inc. is a Delaware Corporation licensed to and doing

18  business within this judicial district.

19  7.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES

20  1-10, inclusive, and Plaintiff therefore sues such defendants by such fictitious names. Plaintiff

21  will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is

22  informed and believes and thereon alleges that each of these fictitiously named defendants is

23  responsible in some manner for the occurrences, acts and omissions alleged herein and that

24  Plaintiffs injuries as alleged herein were proximately caused by such aforementioned defendants.

25                          **FACTS COMMON TO ALL CAUSES OF ACTION**

26  8.      Plaintiff began her employment at United Airlines in March 1997 as a Security Officer

27  after retiring from her 16-year career at Berkeley Police Department as a seasoned public safety

28  officer.

                                        2

9.    After working for United for three years as a Security Officer, a supervisor position became available in or about the year 2000. Plaintiff applied for the position along with Dave Brooks. Plaintiff suffered discrimination when Carl Dean, Manager of Security, refused to allow Plaintiff to promote into the position although the other two people on the interview panel expressed that Plaintiff performed better than Dave Brooks during the interview. In turn, Mr. Dean offered the position to Plaintiff's Caucasian counterpart. Further, Mr. Dean told Steve Whitehouse a fellow panel member, that he did not offer Plaintiff the position because Plaintiff did not like him. Steve Whitehouse reported this comment to Human Resources that he had concerns concerning Mr. Dean's motivation for not selecting Plaintiff for the promotion.

10.   In response to Mr. Whitehouse's expression of concern, United's Human Resources department, as part of a long-standing pattern and practice did not investigate the issues raised by Mr. Whitehouse, and instead responded that Mr. Dean had the choice of who he wanted to work with, and no action would be taken.

11.   Despite having encountered race discrimination in promotion at United, Plaintiff became a Security Supervisor in 2002 from her union position without formal managerial experience. Plaintiff obtained this position because Mr. Dean, who had previously refused Plaintiff a promotion, left the company. Since Mr. Dean left the company and because of the September 11, 2001 tragedies, the need for increased security looked to individuals within the Company who had long-term police officer and public safety experience, and finally promoted Plaintiff. Around the time that Plaintiff was interviewed for the Security Supervisor position, Steve Sulgit, another manager at United, confirmed in a conversation with Plaintiff that she should have been awarded the supervisor position the first time she applied in 2000.

12.   In her new position as Security Supervisor, Plaintiff had supervisory authority over all aspects of security officers,  including assigning tasks, assessing performance, issuing disciplines, controlling workplace conduct such as employee use of parking privileges. At that time of the promotion, she received a 51% increase in pay and started at the low end of the pay range for the position at that time.

3

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    13.    As Security Supervisor, in the course and performance of her duties, Plaintiff consistently
2    expressed her independent judgment on security-related issues and workplace concerns. One
3    such incident occurred in 2002, in which Plaintiff advocated for maintaining certain work task
4    balances, and whether Dennis Hughes, Plaintiff's supervisor at the time, should separate the
5    Security Supervisor duties into an Operational entity and an Administrative entity. Plaintiff
6    explained that such an organizational change would be detrimental to the security office, based
7    on her more than decade of public safety experience.

8    14.    In July 2003, Dennis Hughes, Plaintiff's supervisor at that time, held a meeting with
9    Plaintiff. Mr. Hughes indicated that Plaintiff's performance was sufficient except he had a
10   problem with Plaintiff because she did not agree with his decisions as a supervisor.

11   15.    Despite the July 2003 comment from Mr. Hughes, Plaintiff continued to perform the
12   duties of her job in an exemplary fashion and to the expectations of United.

13   16.    In 2008, United hired Alex Del Campo into a Supervisor Position; however, Mr. Del
14   Campo received a higher salary than Plaintiff, despite having fewer years in law enforcement
15   and less experience on site, and since 2008 has been paid more than Plaintiff for the same work
16   in the same job location.

17   17.    At various points during her career at United, Plaintiff made complaints about unfair
18   treatment from her supervisors and colleagues, including Mike Flanigan, Manager of the
19   Janitorial Services but not a United employee (Caucasian) in 2005, William Knight, Security
20   Supervisor (Caucasian) in 2007, Dwight Crizer, Specialist in the Control Center department
21   (Caucasian) in 2007, and Mr. Del Campo (Hispanic) in 2010 and 2011.

22   18.    In October 2005, Plaintiff filed a complaint with her manager at that time, Susan
23   Franzella, about Mike Flanigan's refusal to cooperate with her. Plaintiff complained that Mr.
24   Flanigan was obstructing a Security office investigation by not providing his employee's
25   statements for a particular incident. As part of United's pattern and practice of quashing rather
26   than investigating employee complaints of unlawful workplace practices, United took no action
27   in response to Plaintiff's complaint.

28

4

1

19.    William Knight became a Security Supervisor at SFO in 2008. When Mr. Knight became

2    supervisor, he worked with Alex Del Campo, who was been hired that year directly into a

3    Security Supervisor position.

4    20.    During this time period, William Knight, who usually worked the swing shift from 1:00

5    PM to 9:30PM expressed animus towards Plaintiff, indicating that did not like working with

6    females, and refused to work in the collaborative fashion required for Security Supervisors with

7    respect to Plaintiff, consistently depricating and ignoring Plaintiff's input on supervisory and

8    public safety issues.

9    21.    Plaintiff is informed and believes that Mr. Del Campo informed graveyard security

10    employees that Plaintiff was unqualified for the position of Security Supervisor, despite her

11    many years of service as a sworn police officer and years of supervisory experience at SFO.

12    22.    From 2008 to the point in time when Defendant demoted Plaintiff, Plaintiff was paid less

13    than her similarly or less qualified younger, male, non-African-American counterpart for the

14    same work.

15    23.    In July 2010, Plaintiff received a complaint from Tonya McCowan, Security Officer

16    (African-American), that Mr. Del Campo was favoring another employee.  Ms. McCowan wrote

17    that Mr. Del Campo had knowledge that Ms. McCowan was being ridiculed by Charlene Santos,

18    Security Officer (Filipino)  but he did not take any action to stop it. Plaintiff brought the issue to

19    the attention of their supervisor Mr. Del Campo, who, consistent with United's pattern and

20    practice of quashing rather than investigating complaints of unfair and unlawful workplace

21    behavior, took no action..

22    24.    In September 2010, Plaintiff had progressed in her career as supervisor and had been

23    recognized for her performance with a position on the Evacuation Committee. The Evacuation

24    Committee prepared employees for evacuation drills so that if any major crisis happened, they

25    would be ready. Plaintiff wanted to ensure that there was a uniform method in place to evacuate

26    everyone at the base. However, without notice, Plaintiff was removed from the committee and

27    replaced with Mr. Del Campo. Plaintiff complained to her supervisor, Steve Sulgit (Caucasian),

28

5

1  who told Plaintiff that she was removed from the committee was because he did not know her
2  experience with evacuations.

3  25.  Plaintiff's long-term job prospects were harmed by her removal from the Evacuation
4  Committee, as such assignments are prerequisites for promotion at United.

5  26.  As a Daytime Security Supervisor working a 5:00 AM-1:30 PM shift, Plaintiff had the
6  authority to coordinate breaks, assign vehicles to employees, implement procedures for the
7  department, and draft memoranda in reference to the same items.

8  27.  Despite this supervisorial authority, Plaintiff was constantly questioned on her
9  supervisory decisions unlike her younger male non-African-American counterparts at SFO. For
10  example, in December 2010, Alex Martin Del Campo, Security Supervisor, who in earlier years
11  had attempted to have Plaintiff transferred, wrote a letter to Bernard Petersen, Security Manager,
12  questioning the operational changes that Plaintiff made.  Plaintiff's non-African-American,
13  younger male counterparts did not have their authority undermined in this fashion.

14  28.  As part of Plaintiff's job duties and responsibility as Security Supervisor, Plaintiff
15  implemented a change that required managers to submit for Security Clearance with Chicago
16  Security instead of the local SFO security.  In response to this increase in security, Mr. Del
17  Campo's again undermined Plaintiff's supervisorial authority, calling her judgment into question.
18  Plaintiff was again forced to remediate the undermining of her authority by complaining that Mr.
19  Del Campo had made repeated attempts to discredit her work, and that she believed that it was
20  for an improper purpose.  Plaintiff further complained to Mr. Peterson that United, by failing to
21  address the illegitimate undermining of her authority, was creating an environment where others
22  in the workplace felt free to openly question the authority of her position; thereby promoting
23  insubordination, with potentially disastrous security consequences.  United did not permit
24  questioning of the chain of command of the non-African-American, younger, male Security
25  Supervisors, such as Mr. Del Campo.

26  29.  During this time period United required Plaintiff to repeatedly justify her decisions and
27  engage in business and operational justifications over and above that applied to her non-African-
28  American, younger, male counterparts.

6

1    30.    Throughout Plaintiff's service as a Security Supervisor, Plaintiff was subjected to daily

2    questioning of her authority, in an atmosphere promoted by her non-African-American, younger

3    male peer, Mr. Del Campo where those under her supervision were able to witness Mr. Del

4    Campo's open contempt of Plaintiff and his refusal to treat Plaintiff as an equal peer.

5    31.    For example, in keeping with his practice of excluding Plaintiff, and not recognizing the

6    authority of her position, in February 2011, Mr. Del Campo transmitted his Out of Office

7    AutoReply to security office employees. In his AutoReply, Mr. Del Campo stated that he will be

8    on vacation for the next 11 days and to contact Bill Knight for any security issues. This

9    instruction made no operational sense, since the next Security Supervisor on duty on the

10    following shift was Plaintiff.

11    32.    Marjorie Carter Burton, Administrative Assistant to Plant Maintenance, replied to Mr.

12    Del Campo's February 18th e-mail, inquiring as to why Plaintiff was excluded as a

13    Supervisor/point of contact for his out of office message.

14    33.    Despite Plaintiff's years of experience at SFO and in the security office, and prior

15    experience as a Berkeley City Police Officer, United permitted an atmosphere where SFO

16    employees felt free to treat Plaintiff as a second-class employee when she consistently

17    performed her duties.

18    34.    In March 2011, Mr. Del Campo escalated what should be ordinary questions regarding

19    operational details to Plaintiff's supervisor in furtherance of his contempt for Plaintiff as an older

20    African-American female, without cause and outside of the normal course of business.

21    35.    Throughout 2010 and 2011, United continued to permit a workplace atmosphere where

22    the authority of Plaintiff's position was needlessly questioned and undermined, despite her many

23    years of experience in security and police work. United knew of this atmosphere and, consistent

24    with its pattern and practice of quashing rather than investigating complaints, took no action to

25    investigate nor remediate the situation. Plaintiff's younger, non-African-American and male

26    counterparts were not subjected to the same purposeful undermining of their authority.

27

28

7

1    36.    As a result of the workplace atmosphere to which Plaintiff was subjected, Plaintiff found

2    it increasingly difficult to obtain the compliance of those she supervised, witnessed greater

3    insubordination, causing greater difficulty in obtaining a positive security state on the premises.

4    37.    In or about September 2011, United commenced a so-called "reorganization" plan at

5    SFO.

6    38.    United has a pattern and practice throughout its operations worldwide of using

7    "reorganization" as a pretext for discriminatory and retaliatory employment actions, to place

8    non-minorities, older workers, and males in positions occupied by competent, well-performing

9    minorities, females, and younger workers.

10   39.    Under cover of the so-called "reorganization", United claims that some unidentified

11   business necessity requires that its employees re-apply for the positions that they then hold.

12   However, when pressed to identify the alleged business necessity for the so-called

13   "reorganization" United is unable to provide any substantial or legitimate business reason for the

14   drastic changes it brings about through its so-called reorganization.

15   40.    As part of the September 2011 "reorganization" Plaintiff was informed that her position

16   was being reorganized; however, despite her requests for information concerning the reasons for

17   the reorganization, no one at United could provide an explanation of what operational issues

18   would require reorganization.

19   41.    Around this time Ms. Marvin-Nilsen told Plaintiff to study certain information for the

20   interview which would be required if Plaintiff wanted to retain her position.  Despite following

21   the instructions of Ms. Marvin-Nilsen, Plaintiff was surprised to learn that none of the

22   information that Mr. Marvin-Nilsen suggested that Plaintiff study came up during the interview.

23   42.    Plaintiff later asked Mr. Knight if Ms. Marvin-Nilsen provided him with any information

24   to prepare for his interview and he informed Plaintiff that he did not receive anything from her.

25   43.    On September 9, 2011, Ms. Marvin-Nilsen told Plaintiff that she would be terminated

26   from her supervisor position effective October 1, 2011. Ms. Marvin-Nilsen stated that United

27   had used a "talent selection process" to fill new roles in the new organization, and a reduction

28   in-force among management and administrative coworkers was necessary.

8

44.     The so-called "talent selection process" and "reorganization" were not conducted in an industry-standard fashion, were not based upon well-recognized principles of workplace fairness, did not take into account experience, and indeed were nothing more than pretext for discrimination and retaliation in the workplace.

45.     Ms. Marvin-Nilsen also informed Plaintiff that she did not do well on her interview and would not be awarded her former position of Security Supervisor.

46.     Out of concern for her future plans, Plaintiff exercised her bumping rights and accepted a pay cut and demotion into a Security Officer position rather than face outright termination of her employment.

47.     Plaintiff started in her demoted position on October 3, 2013. Ms. Marvin-Nilsen offered Plaintiff several days off with pay.

48.     With this demotion, Plaintiff earns $1700 less every month compared to her Security Supervisor position.

49.     Although Plaintiff had numerous years of experience with United and as a sworn police officer, United retained Plaintiff's younger, male, non-African-American counterpart with no police officer experience as Security Supervisor.

50.     Russ Faultner (Caucasian), former manager in the Stores department now holds Plaintiff's position. Mr. Faultner's qualifications for a Security Supervisor position are unknown to Plaintiff as of the filing of this Complaint.

51.     United retaliated against Plaintiff for engaging her rights in bringing her concerns to the company by terminating her from her longtime position and effectively demoting her to a position she held many years prior.

52.     Plaintiff duly filed administrative charges of discrimination herein with the U.S. Equal Employment Opportunity Commission. The EEOC has issued Plaintiff a notice of right to sue on April 5, 2013, thereby authorizing Plaintiff to initiate a civil action against Defendant UNITED, and Plaintiff has exhausted her administrative remedies as to her Title VII claims.

9

1

2

**FIRST CLAIM**
**VIOLATION OF 42 U.S.C. § 2000e, et seq. (TITLE VII)**
**RACE DISCRIMINATION**

3   53.    As a first, separate and distinct claim, Plaintiff complains of Defendants, and for a claim

4   of action, alleges:

5   54.    Jurisdiction is invoked pursuant to 42 U.S.C. § 2000e-5(f)(3), seeking damages for

6   violations of the Plaintiff's employment rights as protected by Title VII of the Civil Rights Act of

7   1964, 42 U.S.C. § 2000e, et seq. Title VII provides that it is an unlawful employment practice

8   for an employer to do either of the following [42 U.S.C. § 2000e-2(a)]:

9

10      (a) Discharge any individual, or otherwise to discriminate against any individual with
        respect to compensation, terms, conditions, or privileges of employment, because of that
        individual's race.

11      (b) Limit, segregate, classify employees in any way that would deprive or tend to deprive

12      any individual of employment opportunities, or otherwise would adversely affect her
        status as an employee, because of the individual's race.

13   55.    Plaintiff is an African-American female, and an employee of Defendant UNITED, and is

14   thus a protected person under Title VII.

15   56.    Throughout her employment Plaintiff was subjected to adverse employment actions,

16   including but not limited to pay disparity, retention, and demotion as to which her non-African-

17   American counterparts were not subjected, which actions substantially altered the terms and

18   conditions of Plaintiff's employment.

19   57.    In addition to the discriminatory actions set forth above, Plaintiff is informed and

20   believes that Defendant engaged in other discriminatory conduct, and Plaintiff will seek leave to

21   amend this complaint to allege such additional unlawful action upon discovery.

22   58.    As a direct and proximate result of the acts and conduct of Defendants as alleged herein,

23   Plaintiff has suffered loss of earnings, related employment benefits, and other economic

24   damages in an amount to be proven at trial herein.

25   59.    Defendants committed the abusive actions alleged herein maliciously, fraudulently, and

26   oppressively, with the wrongful intention of injuring Plaintiff and from an improper and evil

27

28

10

1  motive amounting to malice, and in conscious and reckless disregard of her rights as an
2  employee.

3  60.   Plaintiff duly filed administrative charges of discrimination herein with the U.S. Equal
4  Employment Opportunity Commission. The EEOC has issued Plaintiff a notice of right to sue
5  thereon authorizing Plaintiff to initiate a civil action against Defendant UNITED, and Plaintiff
6  has exhausted her administrative remedies as to her Title VII claims.

7  61.   As result of said actions and conduct of Defendants, Plaintiff has suffered damages for
8  loss of earnings, loss of future earnings, and related employment benefits and opportunities.
9  WHEREFORE, Plaintiff prays judgment as set forth below.

10

11                                  **SECOND CLAIM**
                **VIOLATION OF 42 U.S.C. § 2000e, *et seq.* (TITLE VII)**
12                                   **RETALIATION**

13  62.   As a second, separate and distinct claim, Plaintiff complains of Defendants, and each of
14  them, jointly and severally, and for a claim alleges:

15  63.   The factual allegations of Paragraphs 1 through 61 above, are re-alleged and incorporated
16  herein by reference.

17  64.   Jurisdiction is invoked pursuant to 42 U.S.C. § 2000e-5(f)(3), seeking damages for
18  violations of the Plaintiff's employment rights as protected by Title VII of the Civil Rights Act of
19  1964, 42 U.S.C. § 2000e, *et seq.* Title VII prohibits retaliation against any person for opposing
20  any practice forbidden or made unlawful by Title VII or for participating in a proceeding under
21  Title VII. 42 U.S.C. § 2000e-3(a).

22  65.   Plaintiff was an employee of the Defendant UNITED and is a person protected by said
23  provisions of the Title VII.

24  66.   While employed by Defendants, Plaintiff engaged in protected activity by making
25  complaints of unlawful workplace practices and treatment in the workplace and participating in
26  investigations of unfair workplace practices, and suffered adverse employment actions in
27  retaliation for doing so.

28

11

67.     In doing the acts and engaging in the conduct herein alleged, Defendants intended to and did vex, harass, annoy and cause Plaintiff to suffer and continue to suffer emotional distress.

68.     Plaintiff duly filed administrative charges of discrimination herein with the U.S. Equal Employment Opportunity Commission. The EEOC has issued Plaintiff a notice of right to sue thereon authorizing Plaintiff to initiate a civil action against Defendant UNITED, and Plaintiff has exhausted her administrative remedies as to her Title VII claims.

69.     As result of said actions and conduct of Defendants, Plaintiff has suffered damages for loss of earnings, loss of future earnings, and related employment benefits and opportunities. WHEREFORE, Plaintiff prays judgment as set forth below.

**THIRD CLAIM**
**DISABILITY DISCRIMINATION**
**AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101, et seq. and Section 503**

70.     As a third, separate and distinct claim, Plaintiff complains of Defendant, and each of them, jointly and severally, and for a claim, alleges:

71.     The factual allegations of Paragraphs 1 through 69 above, are re-alleged and incorporated herein by reference.

72.     At all times relevant herein, Plaintiff was an individual suffering from a "disability" within the meaning and scope of 42 U.S.C. § 12102, as she suffers from sleep apnea and a knee injury which affect the major life functions of walking, running, and working, and is therefore part of a protected class under the ADA.

73.     Accordingly, plaintiff is a member of the class of persons protected by 42 U.S.C. § 12112 and § 12203, which make it unlawful for an entity to discriminate against an individual with a disability in employment, fail to provide reasonable accommodations to persons with disabilities, and retaliate against any individual who opposes any unlawful practices.

74.     As set forth above, Plaintiff was discriminated against in her employment with Defendant because of her disability by being wrongfully terminated and/or demoted from her position as Security Supervisor.

12

1    75.    If Defendant is found liable for discrimination under the ADA, it is also subject to

2    liability pursuant to 29 U.S.C. section 793, Section 503 of the Rehabilitation Act of 1973--

3    Employment under Federal contracts standards for discrimination against an employee with a

4    disability.

5    76.    By the acts and omissions of defendants, as set forth above, and each of them, Plaintiff

6    has been directly and legally caused to suffer actual damages including, but not limited to,

7    attorney's fees, costs of suit, and other pecuniary loss not presently ascertained.

8    77.    As a further direct and legal result of the acts and conduct of defendants, and each of

9    them set forth above, Plaintiff has been caused to and did suffer and continues to suffer

10   emotional and mental distress, anguish, humiliation, embarrassment ,and anxiety. The exact

11   nature and extent of said injuries is presently unknown to Plaintiff.

12   78.    Plaintiff is informed and believes and thereon alleges that Defendants committed the acts

13   alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of

14   injuring Plaintiff and acted with an improper and evil motive amounting to malice or oppression,

15   and in conscious disregard of Plaintiff's rights. Defendant's and their managers, officers, and/or

16   directors authorized or ratified the wrongful conduct of their employees and/or are personally

17   guilty of oppression, fraud, or malice. As such, Plaintiff is entitled to recover punitive damages

18   from defendants under federal law in an amount according to proof.

19   79.    As a result of defendants' unlawful as alleged herein, plaintiff is entitled to reasonably

20   attorney's fees and costs of suit as provided in 42 U.S.C. § 12205.

21   80.    Plaintiff duly filed administrative charges of discrimination herein with the U.S. Equal

22   Employment Opportunity Commission. The EEOC has issued Plaintiff a notice of right to sue

23   thereon authorizing Plaintiff to initiate a civil action against Defendant UNITED, and Plaintiff

24   has exhausted her administrative remedies as to her Title VII claims.

25   WHEREFORE, Plaintiff prays judgment as set forth below.

26   / / /

27   / / /

28   / / /

13

## FOURTH CLAIM
### 29 U.S.C. § 621 et. seq.
### AGE DISCRIMINATION

81.    As a fourth, separate and distinct claim, Plaintiff complains of Defendant UNITED, and for a claim, alleges:

82.    The factual allegations of Paragraphs 1 through 80 above, are re-alleged and incorporated herein by reference.

83.    Plaintiff is a female person over the age of 45 and is therefore part of a protected class under the ADEA.

84.    As a direct result of the acts and conduct of the Defendants as alleged herein, Plaintiff has suffered loss of earnings and related employment benefits in an amount to be proven at trial herein.

85.    In doing the acts and in engaging in the conduct alleged herein, Defendants intended to and caused Plaintiff emotional distress.

86.    Plaintiff duly filed administrative charges of discrimination herein with the U.S. Equal Employment Opportunity Commission. The EEOC has issued Plaintiff a notice of right to sue thereon authorizing Plaintiff to initiate a civil action against Defendant UNITED, and Plaintiff has exhausted her administrative remedies.

87.    By the acts and omissions of defendants, as set forth above, and each of them, Plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, attorney's fees, costs of suit, and other pecuniary loss not presently ascertained.

88.    As a further direct and legal result of the acts and conduct of defendants, and each of them set forth above, Plaintiff has been caused to and did suffer and continues to suffer emotional and mental distress, anguish, humiliation, embarrassment ,and anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff.

89.    Plaintiff is informed and believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.  Defendant's and their managers, officers, and/or

14

1 directors authorized or ratified the wrongful conduct of their employees and/or are personally

2 guilty of oppression, fraud, or malice. As such, Plaintiff is entitled to recover punitive damages

3 from defendants under federal law in an amount according to proof.

4 WHEREFORE, Plaintiff prays judgment as set forth below.

5

6 **FIFTH CLAIM**
**VIOLATION OF THE EQUAL PAY ACT**
7 **29 U.S.C. § 206**

8 90.     As a fifth, separate and distinct claim, Plaintiff complains of Defendant UNITED, and for

9 a claim, alleges:

10 91.     The factual allegations of Paragraphs 1 through 89 above, are re-alleged and incorporated

11 herein by reference.

12 92.     Plaintiff is a female person over the age of 45 and is therefore part of a protected class

13 under the Equal Pay Act.

14 93.     Throughout the all relevant time periods from 2008 to her unlawful demotion, Plaintiff

15 has been paid less than her similarly-situated male counterpart for the same work in the same

16 location under the same job description and same job title.

17 94.     Plaintiff worked at United in the Security Supervisor position, whose composite of skill,

18 effort, responsibility, and working conditions are equivalent in value to the Security Supervisor

19 position of her male counterparts. ,

20 95.     Defendant has no legitimate reason for the disparity in pay pursuant to any bona fide

21 seniority system, any merit system, any system that measures earnings by quantity or quality of

22 production, or any factor other than sex.

23 96.     By the acts and omissions of defendants, as set forth above, and each of them, Plaintiff

24 has been directly and legally caused to suffer actual damages including, but not limited to,

25 attorney's fees, costs of suit, and other pecuniary loss not presently ascertained.

26 97.     As a further direct and legal result of the acts and conduct of defendants, and each of

27 them set forth above, Plaintiff has been caused to and did suffer and continues to suffer

28

15

1  emotional and mental distress, anguish, humiliation, embarrassment ,and anxiety. The exact

2  nature and extent of said injuries is presently unknown to Plaintiff.

3  98.     Plaintiff is informed and believes and thereon alleges that Defendants committed the acts

4  alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of

5  injuring Plaintiff and acted with an improper and evil motive amounting to malice or oppression,

6  and in conscious disregard of Plaintiff's rights.  Defendant's and their managers, officers, and/or

7  directors authorized or ratified the wrongful conduct of their employees and/or are personally

8  guilty of oppression, fraud, or malice.  As such, Plaintiff is entitled to recover punitive damages

9  from defendants under federal law in an amount according to proof.

10  WHEREFORE, Plaintiff prays judgment as set forth below.

11  ### PRAYER FOR RELIEF

12  WHEREFORE, Plaintiff prays for relief as follows:

13      1.     For general damages in amounts according to proof and in no event in an amount

14          less than the jurisdictional limit of this court;

15      2.     For an order of the Court restoring Plaintiff to her previous position and directing

16          Defendant to take appropriate steps to validate the age, race, gender, and disability

17          impact of its "talent selection process";

18      3.     For special damages in amounts according to proof;

19      4.     For punitive damages in amounts according to proof;

20      5.     For attorneys' fees as provided by law;

21      6.     For interest as provided by law;

22      7.     For costs of suit herein;

23      8.     For such other and further relief as the Court deems fair and just.

24

25  Dated: June 21, 2013                              SMITH PATTEN

26

27                                                        DOW W. PATTEN
                                                       Attorneys for Plaintiff
28                                                     Drucilla Cooper

16

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURY DEMAND

Plaintiff hereby demands trial by jury of all matters so triable.

Dated: June 21, 2013                              SMITH PATTEN

_____

DOW W. PATTEN
Attorneys for Plaintiff
Drucilla Cooper

17

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF