SMITH PATTEN
SPENCER SMITH, ESQ. (SBN:236587)
DOW W. PATTEN, ESQ. (SBN: 135931)
353 Sacramento St., Suite 1120
San Francisco, California 94111
Telephone (415) 402-0084
Facsimile (415) 520-0104

Attorneys for
DRUCILLA COOPER

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRUCILLA COOPER, an individual<br><br><br><br>Plaintiff,<br><br>vs.<br><br><br>UNITED AIR LINES, INC., and DOES 1-10,<br><br><br>Defendants. | Case No.: CV-13-2870 JSC<br><br>**FIRST AMENDED COMPLAINT**<br><br>**(1) RETALIATION IN VIOLATION OF TITLE VII  (42 U.S.C. § 2000e, et seq.)**<br><br>**(2) DISABILITY DISCRIMINATION IN VIOLATION OF ADA**<br><br>**(3) AGE DISCRIMINATION IN VIOLATION OF ADEA**<br><br>**(4) VIOLATION OF THE EQUAL PAY ACT 29 U.S.C. § 206** |

Plaintiff, DRUCILLA COOPER, files this Complaint, and complains of the named

Defendants, and each of them, jointly and severally, and for causes of action, alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. Section

1331 based upon Plaintiff's federal claims, under 24 U.S.C. § 2000 et seq.

2.      Venue is proper in this Court because the unlawful employment practices complained of occurred in the Northern District of California, and the Defendant, UNITED AIR LINES, INC. (hereinafter "UNITED" or "Defendant") is licensed to and doing business in the Northern District of California.

3.      Plaintiff has been damaged in excess of the jurisdictional amount of this Court.

**INTRODUCTION**

4.      This is an action for damages for Retaliation,  Disability Discrimination, Age Discrimination, and the Equal Pay Act.  This action arises out of events involving Plaintiff Drucilla Cooper ("Plaintiff"), and Defendants UNITED AIR LINES INC. ("Defendant")

**THE PARTIES**

5.      Plaintiff is a female individual formerly serving in the position of Security Supervisor at United at the San Francisco International Airport ("SFO") and currently serving as a Security Officer, and is a resident of Contra Costa County, California.

6.      Defendant United Air Lines, Inc. is a Delaware Corporation licensed to and doing business within this judicial district.

7.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1-10, inclusive, and Plaintiff therefore sues such defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences, acts and omissions alleged herein and that Plaintiffs injuries as alleged herein were proximately caused by such aforementioned defendants.

**FACTS COMMON TO ALL CAUSES OF ACTION**

8.       Plaintiff began her employment at United Airlines in March 1997 as a Security Officer after retiring from her 16-year career at Berkeley Police Department as a seasoned public safety officer.

9.      After working for United for three years as a Security Officer, a supervisor position became available in or about the year 2000. Plaintiff applied for the position along with Dave Brooks. Plaintiff suffered discrimination when Carl Dean, Manager of Security, refused to allow

2

Plaintiff to promote into the position although the other two people on the interview panel expressed that Plaintiff performed better than Dave Brooks during the interview. In turn, Mr. Dean offered the position to Plaintiff's male counterpart. Further, Mr. Dean told Steve Whitehouse a fellow panel member, that he did not offer Plaintiff the position because Plaintiff did not like him. Steve Whitehouse reported this comment to Human Resources that he had concerns concerning Mr. Dean's motivation for not selecting Plaintiff for the promotion.

10.     In response to Mr. Whitehouse's expression of concern, United's Human Resources department, as part of a long-standing pattern and practice did not investigate the issues raised by Mr. Whitehouse, and instead responded that Mr. Dean had the choice of who he wanted to work with, and no action would be taken.

11.     Despite having encountered discrimination in promotion at United, Plaintiff became a Security Supervisor in 2002 from her union position without formal managerial experience. Plaintiff obtained this position because Mr. Dean, who had previously refused Plaintiff a promotion, left the company. Since Mr. Dean left the company and because of the September 11, 2001 tragedies, the need for increased security looked to individuals within the Company who had long-term police officer and public safety experience, and finally promoted Plaintiff. Around the time that Plaintiff was interviewed for the Security Supervisor position, Steve Sulgit, another manager at United, confirmed in a conversation with Plaintiff that she should have been awarded the supervisor position the first time she applied in 2000.

12.      In her new position as Security Supervisor, Plaintiff had supervisory authority over all aspects of security officers,  including assigning tasks, assessing performance, issuing disciplines, controlling workplace conduct such as employee use of parking privileges. At that time of the promotion, she received a 51% increase in pay and started at the low end of the pay range for the position at that time.

13.     As Security Supervisor, in the course and performance of her duties, Plaintiff consistently expressed her independent judgment on security-related issues and workplace concerns.  One such incident occurred in 2002, in which Plaintiff advocated for maintaining certain work task balances, and whether Dennis Hughes, Plaintiff's supervisor at the time, should separate the

Security Supervisor duties into an Operational entity and an Administrative entity. Plaintiff explained that such an organizational change would be detrimental to the security office, based on her more than decade of public safety experience.

14.    In July 2003, Dennis Hughes, Plaintiff's supervisor at that time, held a meeting with Plaintiff. Mr. Hughes indicated that Plaintiff's performance was sufficient except he had a problem with Plaintiff because she did not agree with his decisions as a supervisor.

15.    Despite the July 2003 comment from Mr. Hughes, Plaintiff continued to perform the duties of her job in an exemplary fashion and to the expectations of United.

16.    In 2008, United hired Alex Del Campo into a Supervisor Position; however, Mr. Del Campo received a higher salary than Plaintiff, despite having fewer years in law enforcement and less experience on site, and since 2008 has been paid more than Plaintiff for the same work in the same job location.

17.    At various points during her career at United, Plaintiff made complaints about unfair treatment from her supervisors and colleagues, including Mike Flanigan, Manager of the Janitorial Services but not a United employee in 2005, William Knight, Security Supervisor in 2007, Dwight Crizer, Specialist in the Control Center department in 2007, and Mr. Del Campo in 2010 and 2011.

18.    In October 2005, Plaintiff filed a complaint with her manager at that time, Susan Franzella, about Mike Flanigan's refusal to cooperate with her. Plaintiff complained that Mr. Flanigan was obstructing a Security office investigation by not providing his employee's statements for a particular incident. As part of United's pattern and practice of quashing rather than investigating employee complaints of unlawful workplace practices, United took no action in response to Plaintiff's complaint.

19.    William Knight became a Security Supervisor at SFO in 2008. When Mr. Knight became supervisor, he worked with Alex Del Campo, who was been hired that year directly into a Security Supervisor position.

///

4

20.     During this time period, William Knight, who usually worked the swing shift from 1:00 PM to 9:30PM expressed animus towards Plaintiff, indicating that did not like working with females, and refused to work in the collaborative fashion required for Security Supervisors with respect to Plaintiff, consistently deprecating and ignoring Plaintiff's input on supervisory and public safety issues.

21.     Plaintiff is informed and believes that Mr. Del Campo informed graveyard security employees that Plaintiff was unqualified for the position of Security Supervisor, despite her many years of service as a sworn police officer and years of supervisory experience at SFO.

22.     From 2008 to the point in time when Defendant demoted Plaintiff, Plaintiff was paid less than her similarly or less qualified younger, male, counterparts for the same work.

23.     In July 2010, Plaintiff received a complaint from Tonya McCowan, Security Officer, that Mr. Del Campo was favoring another employee.  Ms. McCowan wrote that Mr. Del Campo had knowledge that Ms. McCowan was being ridiculed by Charlene Santos, Security Officer but he did not take any action to stop it. Plaintiff brought the issue to  the attention of their supervisor Mr. Del Campo, who, consistent with United's pattern and practice of quashing rather than investigating complaints of unfair and unlawful workplace behavior, took no action..

24.     In September 2010, Plaintiff had progressed in her career as supervisor and had been recognized for her performance with a position on the Evacuation Committee. The Evacuation Committee prepared employees for evacuation drills so that if any major crisis happened, they would be ready. Plaintiff wanted to ensure that there was a uniform method in place to evacuate everyone at the base. However, without notice, Plaintiff was removed from the committee and replaced with Mr. Del Campo. Plaintiff complained to her supervisor, Steve Sulgit , who told Plaintiff that she was removed from the committee was because he did not know her experience with evacuations.

25.     Plaintiff's long-term job prospects were harmed by her removal from the Evacuation Committee, as such assignments are prerequisites for promotion at United.

///

///

FIRST AMENDED COMPLAINT                                    Case No.: CV-13-2870 JSC

26.     As a Daytime Security Supervisor working a 5:00 AM-1:30 PM shift, Plaintiff had the authority to coordinate breaks, assign vehicles to employees, implement procedures for the department, and draft memoranda in reference to the same items.

27.     Despite this supervisorial authority, Plaintiff was constantly questioned on her supervisory decisions unlike her younger male counterparts at SFO. For example, in December 2010, Alex Martin Del Campo, Security Supervisor, who in earlier years had attempted to have Plaintiff transferred, wrote a letter to Bernard Petersen, Security Manager, questioning the operational changes that Plaintiff made.   Plaintiff's younger male counterparts did not have their authority undermined in this fashion.

28.     As part of Plaintiff's job duties and responsibility as Security Supervisor, Plaintiff implemented a change that required managers to submit for Security Clearance with Chicago Security instead of the local SFO security.  In response to this increase in security, Mr. Del Campo's again undermined Plaintiff's supervisorial authority, calling her judgment into question. Plaintiff was again forced to remediate the undermining of her authority by complaining that Mr. Del Campo had made repeated attempts to discredit her work, and that she believed that it was for an improper purpose.   Plaintiff further complained to Mr. Peterson that United, by failing to address the illegitimate undermining of her authority, was creating an environment where others in the workplace felt free to openly question the authority of her position; thereby promoting insubordination, with potentially disastrous security consequences.  United did not permit questioning of the chain of command of the younger, male Security Supervisors, such as Mr. Del Campo.

29.     During this time period United required Plaintiff to repeatedly justify her decisions and engage in business and operational justifications over and above that applied to her younger, male counterparts.

30.     Throughout Plaintiff's service as a Security Supervisor, Plaintiff was subjected to daily questioning of her authority, in an atmosphere promoted by her younger male peer, Mr. Del Campo where those under her supervision were able to witness Mr. Del Campo's open contempt of Plaintiff and his refusal to treat Plaintiff as an equal peer.

6

31.   For example, in keeping with his practice of excluding Plaintiff, and not recognizing the authority of her position, in February 2011, Mr. Del Campo transmitted his Out of Office AutoReply to security office employees. In his AutoReply, Mr. Del Campo stated that he will be on vacation for the next 11 days and to contact Bill Knight for any security issues.  This instruction made no operational sense, since the next Security Supervisor on duty on the following shift was Plaintiff.

32.    Marjorie Carter Burton,  Administrative Assistant to Plant Maintenance, replied to Mr. Del Campo's February 18th e-mail, inquiring as to why Plaintiff was excluded as a Supervisor/point of contact for his out of office message.

33.   Despite Plaintiff's years of experience at SFO and in the security office, and prior experience as a Berkeley City Police Officer, United permitted an atmosphere where SFO employees felt free to treat Plaintiff as  a second-class employee when she consistently performed her duties.

34.   In March 2011, Mr. Del Campo escalated what should be ordinary questions regarding operational details to Plaintiff's supervisor in furtherance of his contempt for Plaintiff as an older female, without cause and outside of the normal course of business.

35.   Throughout 2010 and 2011, United continued to permit a workplace atmosphere where the authority of Plaintiff's position was needlessly questioned and undermined, despite her many years of experience in security and police work.  United knew of this atmosphere and, consistent with its pattern and practice of quashing rather than investigating complaints, took no action to investigate nor remediate the situation. Plaintiff's younger and male counterparts were not subjected to the same purposeful undermining of their authority.

36.   As a result of the workplace atmosphere to which Plaintiff was subjected, Plaintiff found it increasingly difficult to obtain the compliance of those she supervised, witnessed greater insubordination, causing greater difficulty in obtaining a positive security state on the premises.

37.   In or about September 2011, United commenced a so-called "reorganization" plan at SFO.

///

FIRST AMENDED COMPLAINT                    Case No.: CV-13-2870 JSC

38.     United has a pattern and practice throughout its operations worldwide of using "reorganization" as a pretext for discriminatory and retaliatory employment actions, to place younger, male workers in positions occupied by competent, well-performing females, and older workers.

39.     Under cover of the so-called "reorganization", United claims that some unidentified business necessity requires that its employees re-apply for the positions that they then hold. However, when pressed to identify the alleged business necessity for the so-called "reorganization" United is unable to provide any substantial or legitimate business reason for the drastic changes it brings about through its so-called reorganization.

40.     As part of the September 2011 "reorganization" Plaintiff was informed that her position was being reorganized; however, despite her requests for information concerning the reasons for the reorganization, no one at United could provide an explanation of what operational issues would require reorganization.

41.     Around this time Ms. Marvin-Nilsen told Plaintiff to study certain information for the interview which would be required if Plaintiff wanted to retain her position.   Despite following the instructions of Ms. Marvin-Nilsen, Plaintiff was surprised to learn that none of the information that Mr. Marvin-Nilsen suggested that Plaintiff study came up during the interview.

42.     Plaintiff later asked Mr. Knight if Ms. Marvin-Nilsen provided him with any information to prepare for his interview and he informed Plaintiff that he did not receive anything from her.

43.     On September 9, 2011, Ms. Marvin-Nilsen told Plaintiff that she would be terminated from her supervisor position effective October 1, 2011. Ms. Marvin-Nilsen stated that United had used a "talent selection process" to fill new roles in the new organization, and a reduction in-force among management and administrative coworkers was necessary.

44.     The so-called "talent selection process" and "reorganization" were not conducted in an industry-standard fashion, were not based upon well-recognized principles of workplace fairness, did not take into account experience, and indeed were nothing more than pretext for discrimination and retaliation in the workplace.

///

8

45.   Ms. Marvin-Nilsen also informed Plaintiff that she did not do well on her interview and would not be awarded her former position of Security Supervisor.

46.   Out of concern for her future plans, Plaintiff exercised her bumping rights and accepted a pay cut and demotion into a Security Officer position rather than face outright termination of her employment.

47.   Plaintiff started in her demoted position on October 3, 2011. Ms. Marvin-Nilsen offered Plaintiff several days off with pay.

48.   With this demotion, Plaintiff earns $1700 less every month compared to her Security Supervisor position.

49.   Although Plaintiff had numerous years of experience with United and as a sworn police officer, United retained Plaintiff's younger, male counterpart with no police officer experience as Security Supervisor.

50.   Russ Faultner, former manager in the Stores department now holds Plaintiff's position. Mr. Faultner's qualifications for a Security Supervisor position are unknown to Plaintiff as of the filing of this Complaint.

51.   United retaliated against Plaintiff for engaging her rights in bringing her concerns to the company by terminating her from her longtime position and effectively demoting her to a position she held many years prior.

52.   Plaintiff duly filed administrative charges of discrimination herein with the U.S. Equal Employment Opportunity Commission. The EEOC has issued Plaintiff a notice of right to sue on April 5, 2013, thereby authorizing Plaintiff to initiate a civil action against Defendant UNITED, and Plaintiff has exhausted her administrative remedies as to her Title VII claim.

**FIRST CLAIM**
**VIOLATION OF 42 U.S.C. § 2000e, *et seq.* (TITLE VII)**
**RETALIATION**

53.   Plaintiff complains of Defendants, and each of them, jointly and severally, and for a claim alleges:

9

54.     The factual allegations of Paragraphs 1 through 52 above, are re-alleged and incorporated herein by reference.

55.     Jurisdiction is invoked pursuant to 42 U.S.C. § 2000e-5(f)(3), seeking damages for violations of the Plaintiff's employment rights as protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Title VII prohibits retaliation against any person for opposing any practice forbidden or made unlawful by Title VII or for participating in a proceeding under Title VII. 42 U.S.C. § 2000e-3(a).

56.     Plaintiff was an employee of the Defendant UNITED and is a person protected by said provisions of the Title VII.

57.     While employed by Defendants, Plaintiff engaged in protected activity by making complaints of unlawful workplace practices and treatment in the workplace and participating in investigations of unfair workplace practices, and suffered adverse employment actions in retaliation for doing so.

58.     In doing the acts and engaging in the conduct herein alleged, Defendants intended to and did vex, harass, annoy and cause Plaintiff to suffer and continue to suffer emotional distress.

59.     Plaintiff duly filed administrative charges of discrimination herein with the U.S. Equal Employment Opportunity Commission. The EEOC has issued Plaintiff a notice of right to sue thereon authorizing Plaintiff to initiate a civil action against Defendant UNITED, and Plaintiff has exhausted her administrative remedies as to her Title VII claims.

60.     As result of said actions and conduct of Defendants, Plaintiff has suffered damages for loss of earnings, loss of future earnings, and related employment benefits and opportunities. WHEREFORE, Plaintiff prays judgment as set forth below.

**SECOND CLAIM**
**DISABILITY DISCRIMINATION**
**AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101, et seq.**

61.     As a second, separate and distinct claim, Plaintiff complains of Defendant, and each of them, jointly and severally, and for a claim, alleges:

62.     The factual allegations of Paragraphs 1 through 50 above, are re-alleged and incorporated herein by reference.

63.     At all times relevant herein, Plaintiff was an individual suffering from a "disability" within the meaning and scope of 42 U.S.C. § 12102, as she suffers from sleep apnea and a knee injury which affect the major life functions of walking, running, and working, and is therefore part of a protected class under the ADA.

64.     Accordingly, plaintiff is a member of the class of persons protected by 42 U.S.C. § 12112 and § 12203, which make it unlawful for an entity to discriminate against an individual with a disability in employment, fail to provide reasonable accommodations to persons with disabilities, and retaliate against any individual who opposes any unlawful practices.

65.     As set forth above,  Plaintiff was discriminated against in her employment with Defendant because of her disability by being wrongfully terminated and/or demoted from her position as Security Supervisor.

66.     By the acts and omissions of defendants, as set forth above, and each of them, Plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, attorney's fees, costs of suit, and other pecuniary loss not presently ascertained.

67.     As a further direct and legal result of the acts and conduct of defendants, and each of them set forth above, Plaintiff has been caused to and did suffer and continues to suffer emotional and mental distress, anguish, humiliation, embarrassment ,and anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff.

68.     Plaintiff is informed and believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.  Defendant's and their managers, officers, and/or directors authorized or ratified the wrongful conduct of their employees and/or are personally guilty of oppression, fraud, or malice.  As such, Plaintiff is entitled to recover punitive damages from defendants under federal law in an amount according to proof.

FIRST AMENDED COMPLAINT                                    Case No.: CV-13-2870 JSC

69.     As a result of defendants' unlawful as alleged herein, plaintiff is entitled to reasonably attorney's fees and costs of suit as provided in 42 U.S.C. § 12205.

70.     Plaintiff duly filed administrative charges of discrimination herein with the U.S. Equal Employment Opportunity Commission. The EEOC has issued Plaintiff a notice of right to sue thereon authorizing Plaintiff to initiate a civil action against Defendant UNITED, and Plaintiff has exhausted her administrative remedies as to her Title VII claims.

WHEREFORE, Plaintiff prays judgment as set forth below.

## THIRD CLAIM
## 29 U.S.C. § 621 et. seq.
## AGE DISCRIMINATION

71.     As a third, separate and distinct claim, Plaintiff complains of Defendant UNITED, and for a claim, alleges:

72.     The factual allegations of Paragraphs 1 through 70 above, are re-alleged and incorporated herein by reference.

73.     Plaintiff is a female person over the age of 45 and is therefore part of a protected class under the ADEA.

74.     As a direct result of the acts and conduct of the Defendants as alleged herein, Plaintiff has suffered loss of earnings and related employment benefits in an amount to be proven at trial herein.

75.     In doing the acts and in engaging in the conduct alleged herein, Defendants intended to and caused Plaintiff emotional distress.

76.     Plaintiff duly filed administrative charges of discrimination herein with the U.S. Equal Employment Opportunity Commission. The EEOC has issued Plaintiff a notice of right to sue thereon authorizing Plaintiff to initiate a civil action against Defendant UNITED, and Plaintiff has exhausted her administrative remedies.

77.     By the acts and omissions of defendants, as set forth above, and each of them, Plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, attorney's fees, costs of suit, and other pecuniary loss not presently ascertained.

12

FIRST AMENDED COMPLAINT                              Case No.: CV-13-2870 JSC

78.    As a further direct and legal result of the acts and conduct of defendants, and each of them set forth above, Plaintiff has been caused to and did suffer and continues to suffer emotional and mental distress, anguish, humiliation, embarrassment ,and anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff.

79.    Plaintiff is informed and believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.   Defendant's and their managers, officers, and/or directors authorized or ratified the wrongful conduct of their employees and/or are personally guilty of oppression, fraud, or malice.  As such, Plaintiff is entitled to recover punitive damages from defendants under federal law in an amount according to proof.

WHEREFORE, Plaintiff prays judgment as set forth below.

**FOURTH CLAIM**
**VIOLATION OF THE EQUAL PAY ACT**
**29 U.S.C. § 206**

80.    As a fourth, separate and distinct claim, Plaintiff complains of Defendant UNITED, and for a claim, alleges:

81.    The factual allegations of Paragraphs 1 through 79 above, are re-alleged and incorporated herein by reference.

82.    Plaintiff is a female person and is therefore part of a protected class under the Equal Pay Act.

83.    Throughout the all relevant time periods from 2008 to her unlawful demotion, Plaintiff has been paid less than her similarly-situated male counterpart for the same work in the same location under the same job description and same job title.

84.    Plaintiff worked at United in the Security Supervisor position, whose composite of skill, effort, responsibility, and working conditions are equivalent in value to the Security Supervisor position of her male counterparts. ,

13

85.     Defendant has no legitimate reason for the disparity in pay pursuant to any bona fide seniority system, any merit system, any system that measures earnings by quantity or quality of production, or any factor other than sex.

86.     By the acts and omissions of defendants, as set forth above, and each of them, Plaintiff has been directly and legally caused to suffer actual damages including, but not limited to, attorney's fees, costs of suit, and other pecuniary loss not presently ascertained.

87.     As a further direct and legal result of the acts and conduct of defendants, and each of them set forth above, Plaintiff has been caused to and did suffer and continues to suffer emotional and mental distress, anguish, humiliation, embarrassment ,and anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff.

88.     Plaintiff is informed and believes and thereon alleges that Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff and acted with an improper and evil motive amounting to malice or oppression, and in conscious disregard of Plaintiff's rights.  Defendant's and their managers, officers, and/or directors authorized or ratified the wrongful conduct of their employees and/or are personally guilty of oppression, fraud, or malice.  As such, Plaintiff is entitled to recover punitive damages from defendants under federal law in an amount according to proof.

WHEREFORE, Plaintiff prays judgment as set forth below.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1.     For general damages in amounts according to proof and in no event in an amount less than the jurisdictional limit of this court;

2.     For an order of the Court restoring Plaintiff to her previous position and directing Defendant to take appropriate steps to validate the disability and age impact of its "talent selection process";

3.     For special damages in amounts according to proof;

4.     For punitive damages in amounts according to proof;

5.     For attorneys' fees as provided by law;

6.     For interest as provided by law;

7.     For costs of suit herein;

8.     For such other and further relief as the Court deems fair and just.


Dated: November 21, 2014                              SMITH PATTEN

                                                             */s/ Dow W. Patten*
                                                             DOW W. PATTEN
                                                             Attorneys for Plaintiff
                                                             Drucilla Cooper


**JURY DEMAND**

Plaintiff hereby demands trial by jury of all matters so triable.


Dated: November 21, 2014                              SMITH PATTEN

                                                             */s/ Dow W. Patten*
                                                             DOW W. PATTEN
                                                             Attorneys for Plaintiff
                                                             Drucilla Cooper

FIRST AMENDED COMPLAINT                              Case No.: CV-13-2870 JSC